UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHREY N., <br><br> Petitioner, <br><br> v. <br><br> WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al., <br><br> Respondents. | No. 1:26-cv-00345-TLN-AC <br><br> **ORDER** |

This matter is before the Court on Petitioner Shrey N.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) On January 20, 2026, the Court ordered Respondents to submit a response to Petitioner's request for immediate injunctive relief. (ECF No. 5.) On January 23, 2026, Respondents filed an opposition to Petitioner's request. (ECF No. 10.) On January 27, 2026, Petitioner filed a traverse. (ECF No. 11.) Both parties submit that if the Court is inclined to grant a preliminary injunction, judicial economy counsels that the Court should enter final judgment on the habeas petition. (ECF No. 10 at 2; ECF No. 11 at 1.) For the reasons set forth below, Petitioner's habeas petition is GRANTED. (ECF No. 1.)

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a native and citizen of India. (ECF No. 10 at 2.) Petitioner entered the United States on or about February 13, 2023. (*Id.*; ECF No. 1 at 5.) Petitioner was issued a Notice to Appear and released to the Alternatives to Detention Intensive Supervision Appearance

1

1  Program ("ISAP"). (*Id.*) Petitioner submits that he complied with all conditions of his release to
2  the best of his ability. (ECF No. 1 at 5.) He fully cooperated with ICE and never missed an
3  office visit or ISAP video call. (*Id.* at 6.) He obtained work authorization, gained employment,
4  and has no criminal history. (*Id.* at 5.) He also built strong ties to his community and Sikh
5  Temple. (*Id.*)
6      Petitioner was ordered to visit the ICE office in Stockton on August 2, 2025. (*Id.* at 6.)
7  Upon arrival, ICE officers arrested him without notice. (*Id.*) After he was detained, Petitioner's
8  Immigration Court removal proceedings were dismissed on August 7, 2025. (ECF No. 10 at 13–
9  14.) Petitioner appealed the dismissal of his proceedings with the Board of Immigration Appeals.
10 (*Id.* at 14.) His appeal remains pending. (*Id.*) Petitioner has been in detention for approximately
11 6 months at the Golden State Annex Detention Center. (ECF No. 1 at 2.)
12     Petitioner filed the instant petition for writ of habeas corpus on January 16, 2026. (ECF
13 No. 1.) Petitioner challenges his detention as violating his due process rights. (*Id.* at 16–17.)
14     **II.     STANDARD OF LAW**
15     The Constitution guarantees the availability of the writ of habeas corpus "to every
16 individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)
17 (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in
18 custody upon the legality of that custody, and . . . the traditional function of the writ is to secure
19 release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas
20 corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the
21 Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has
22 served as a means of reviewing the legality of Executive detention, and it is in that context that its
23 protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a
24 district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v.*
25 *Davis*, 533 U.S. 678, 687 (2001).
26     **III.    ANALYSIS**
27     Petitioner contends that his ongoing, prolonged detention without a hearing violates his
28 due process rights under the Fifth Amendment. (ECF No. 1 at 16–17.)

1    The Fifth Amendment Due Process Clause prohibits government deprivation of an
2 individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d
3 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of
4 the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693 ("[T]he Due
5 Process Clause applies to all 'persons' within the United States, including noncitizens, whether
6 their presence here is lawful, unlawful, temporary, or permanent."). These due process rights
7 extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see*
8 *Demore v. Kim*, 538 U.S. 510, 523 (2003).

9    Courts examine procedural due process claims in two steps: the first asks whether there
10 exists a protected liberty interest under the Due Process Clause, and the second examines the
11 procedures necessary to ensure any deprivation of that protected liberty interest accords with the
12 Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);
13 *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,
14 the question remains what process is due.").

15              *a)  Liberty Interest*

16    "Freedom from imprisonment—from government custody, detention, or other forms of
17 physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects."
18 *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or
19 over whose liberty the government wields significant discretion retain a protected interest in their
20 liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine
21 whether an individual's specific conditional release rises to the level of a protected liberty
22 interest, courts have "compar[ed] the specific conditional release in the case before them with the
23 liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-
24 01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

25    Here, the Court finds Petitioner developed "enduring attachments of normal life" during
26 his conditional release as described in *Morrissey*, 408 U.S. at 482. Prior to re-detention,
27 Petitioner lived in the United States for approximately two and a half years. (ECF No. 11 at 4.)
28 During that time, he obtained work authorization and developed strong ties to the community.

(*Id.*)  He complied with the terms of his release and has no criminal history.  (*Id.* at 5.)  For these reasons, the Court finds Petitioner's prior release from immigration custody creates a substantial liberty interest protected by the Fifth Amendment.  *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

Respondents' argument that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(1) ("§ 1225(b)(1)") does not change this Court's analysis.  (ECF No. 10 at 3–6.)  Section 1225(b)(1) provides for expedited removal and mandatory detention of a category of noncitizens seeking asylum through the specific process outlined in the statute.  The individuals covered by this section are defined as follows:

> An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II).  The statute explains when individuals who fall within this description are subject to mandatory detention: "If the officer determines at the time of the [asylum] interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii); *see Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110, at *3 (N.D. Cal. Sept. 3, 2025) (describing the § 1225(b)(1) process).

Here, there is no evidence on the record to suggest Petitioner is a member of the group subject to § 1225(b)(1) or that he sought or is seeking asylum through the § 1225(b)(1) process.  Respondents submit no argument or evidence that an immigration officer made the requisite determinations for § 1225(b)(1) to apply to Petitioner.  And while Petitioner states that he entered the United States to seek asylum (ECF No. 1 at 5), no argument or evidence has been presented suggesting that Petitioner went through or is currently in § 1225(b)(1) asylum proceedings.  Respondents' argument that Petitioner is subject to mandatory detention pursuant to § 1225(b)(1)

thus fails and does not alter the Court's finding that Petitioner has a protected liberty interest.[1]

*b) Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor – Petitioner's private interest – Petitioner has been out of custody since February of 2023. (ECF No. 11 at 3–4.) In that time, Petitioner lawfully secured employment and built ties to his local community and Sikh Temple. (*Id.* at 4.) The time Petitioner has spent in the United States, as well as his established relationships, create a powerful private interest in Petitioner's continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

As to the second *Mathews* factor – the risk of erroneous deprivation – the Court finds the risk here be considerable. The risk of an erroneous deprivation of Petitioner's liberty interest is high where he has received virtually no procedural safeguards such as a bond or custody redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). This is particularly so where, as here, Petitioner has no criminal history and has complied with the conditions of his release. (ECF No. 11 at 5); *see R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025)

---

[1] Having found Petitioner is not subject to 8 U.S.C. § 1225(b)(1), the Court agrees with Petitioner that he is instead subject to 8 U.S.C. § 1226(a) and entitled to the process that statute demands. (ECF No. 11 at 2–3.) However, because Petitioner's habeas petition only claims a constitutional violation, the Court need not discuss a potential statutory violation.

("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

As to the third *Mathews* factor, the government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is negligible. *R.D.T.M.*, 2025 WL 2686866 at *6. Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the government's interest is further diminished here where Petitioner was already found appropriate for release, has complied with the conditions of his release, and has no criminal history. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."). *Hernandez*, 872 F.3d at 994.

The Court therefore finds Petitioner's re-detention without a hearing violate due process. The Court GRANTS Petitioner's petition for writ of habeas corpus. (ECF No. 1).

### IV. CONCLUSION

IT IS HEREBY ORDERED:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) is GRANTED;

2. Respondents must IMMEDIATELY RELEASE Petitioner from custody. Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

3. Respondents shall submit notice certifying compliance with this Order by February 3, 2026.

4. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: January 30, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE